NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1084                                        Appeals Court

COMMONWEALTH vs. KENVILLE ROBERTSON.

No. 12-P-1084.

Norfolk.      March 4, 2015. – August 14, 2015.

Present: Trainor, Wolohojian, & Carhart, JJ.


Rape. Evidence, Prior misconduct, Pattern of conduct.
    Practice, Criminal, New trial, Assistance of counsel.
    Constitutional Law, Assistance of counsel. Due Process of
    Law, Assistance of counsel.



    Indictments found and returned in the Superior Court
Department on March 17, 2010.

    A motion in limine was heard by Mitchell H. Kaplan, J.; the
cases were tried before Robert C. Cosgrove, J., and a motion for
a new trial was heard by him.


    Bernard Grossberg for the defendant.
    Marguerite T. Grant, Assistant District Attorney, for the
Commonwealth.


    CARHART, J. The defendant appeals from his convictions of

three counts of rape of a child with force, three counts of

aggravated rape of a child, three counts of indecent assault and

battery on a child under fourteen, and assault with intent to

rape a child, arguing that (1) the motion judge erred in allowing the Commonwealth's motion in limine to present prior bad act evidence, (2) the trial judge erred in allowing prior bad act evidence as evidence at the trial and in his instructions to the jury in this regard, and (3) the trial judge erred in denying his motion for new trial.  We affirm.

Background.  The jury were presented with the following evidence at trial.  The defendant is the biological father of the younger brother of the victim, N.M.  Although the defendant did not live with N.M., he had a key to her house and visited often.  N.M. called the defendant, "Dad," and he provided for her financially.[1]  In 2004, when N.M. was eight years old, the defendant began sexually abusing her.[2]  The abuse occurred while N.M. and the defendant slept in the same bed, along with N.M.'s mother and brother.  N.M. testified that on numerous occasions the defendant performed oral sex on her, engaged in vaginal intercourse, forced her to touch his penis, and touched her breasts, vagina, and buttocks.  The defendant warned N.M. that

---

[1] N.M. testified that one of the reasons she did not report the abuse was because she knew the defendant was giving her mother money for a restaurant.

[2] At the time when the abuse began, N.M. lived in Boston. When she was thirteen years old, N.M. moved to Dover, where the sexual abuse underlying the defendant's convictions took place. The defendant properly does not raise any issue on appeal related to the uncharged sexual assaults.  Commonwealth v. Machado, 339 Mass. 713, 715 (1959).

if she reported the abuse "the police would get involved," and N.M. believed that meant she would be taken away from her family. The abuse continued until N.M. was thirteen years old.

The defendant's biological daughter, J.R., also testified at trial.[3] She stated that from around 1990, when she was approximately seven or eight years old, until about 1994 or 1996 (when she was eleven or twelve years old), the defendant sexually abused her.[4] During that period of time, J.R. and her siblings lived with the defendant while their mother remained in St. Vincent. J.R. testified that the defendant would call her into his bedroom and then force her to perform oral sex on him and to engage in vaginal intercourse. The defendant would also rub her "chest area." J.R. reported the abuse to a teacher, and a social worker was sent to visit her at home. Subsequently, the defendant told J.R. that if she continued to report the abuse, she and her siblings would be put in different foster

---

[3] J.R.'s testimony was the subject of the motion in limine that the defendant asserts was improperly allowed.

[4] Although J.R. testified at trial that the abuse ended in 1994, the parties refer in their motion in limine memoranda and briefs to the abuse ending in 1996. Because the issue here is whether the judge abused his discretion by ruling, based on the facts presented to him, that the abuse was not too remote, we treat the abuse as having ended in 1996.

homes and she would never see them again.  Afterwards, J.R. recanted her allegations.[5]

Discussion.  1.  Prior bad act evidence.  "In reviewing the judge's exercise of discretion in a close case such as this, the test is not whether we would have made a different decision." Commonwealth v. Pillai, 445 Mass. 175, 181 (2005) (Pillai). Instead, we will uphold the judge's decision unless "we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (citation omitted).

Here, the defendant contends that the motion and trial judges (the judges) abused their discretion in allowing the Commonwealth's motion in limine to permit the defendant's daughter, J.R., to testify that the defendant sexually abused her when she was a child in order to show "the defendant's pattern of conduct, plans, or to corroborate the testimony of the alleged victim [N.M.]."  Specifically, the defendant claims that the judges erred because (1) the incidents are factually dissimilar and too remote in time to constitute a pattern of

---

[5] We note that in both instances, it appears that the defendant's continued abuse of the victims was tied to his access to them.  His abuse of J.R. ceased shortly after her mother moved from St. Vincent to Boston and began living with them and his abuse of N.M. stopped after she reported the abuse to her mother.

operation, and (2) prior bad act evidence cannot be used to "corroborate" a victim's testimony.[6]  We disagree.

Although the prosecution cannot introduce evidence of a defendant's prior bad acts "for the purposes of showing his bad character or propensity to commit the crime charged," such evidence may be admissible to show "a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive."  Commonwealth v. Helfant, 398 Mass. 214, 224 (1986).  Prior bad acts involving someone other than the victim are admissible so long as they are "connected 'in time, place, or

---

[6] Contrary to the defendant's assertion, under decisional case law prior bad act evidence showing a pattern of conduct "can be admitted . . . where it corroborates the victim's testimony."  Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 818 (1998).  See id. at 817-818 ("[C]ase law is particularly clear that evidence of uncharged sexual misconduct, when not too remote in time,    . . . may also be admitted to corroborate the victim's testimony . . . .")  See also Pillai, 445 Mass. at 183-184, quoting from Commonwealth v. King, 387 Mass. 464, 472 (1982) (prior bad act evidence of sexual assault on different minor "would likely be admissible not only to show a common pattern of conduct, but also 'to corroborate[] the victim's testimony . . .'"); Commonwealth v. Aguiar, 78 Mass. App. Ct. 193, 204 (2010).  Even were we to assume that prior bad act evidence cannot be used to corroborate the victim's testimony, we cannot say that inclusion in the jury instructions of the statement that it could be used to corroborate the victim's testimony gave rise to a substantial risk of a miscarriage of justice here, given the other evidence presented at trial, see Commonwealth v. Delong, 72 Mass. App. Ct. 42, 45 (2008), the fact that the evidence was admissible to show the existence of a pattern of operation, and the overall brevity of J.R.'s testimony regarding the sexual abuse.  Moreover, the trial judge's proper and forceful instructions to the jury cured any prejudice.  See Pillai, 445 Mass. at 190.  See generally Mass. G. Evid. § 404(b) (2015).

other relevant circumstances to the particular sex offense for which the defendant is being tried.'" Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 818 (1998), quoting from Commonwealth v. King, 387 Mass. 464, 470 (1982) (King).

Here, the defendant's claim that the incidents are too factually dissimilar to constitute evidence of a pattern of operation is meritless. First, the circumstances under which the abuse occurred was similar in both cases. Specifically, the defendant was, the motion judge found, a "father-like figure" to the victims and exploited this relationship, along with the victims' financial dependence on him, in order to keep the victims from reporting the abuse. See Pillai, 445 Mass. at 181-182 (cases factually similar where victims were same age, "away from their homes and dependent on the defendant for parental protection . . . . [and] [t]he defendant used the same method of access" to the victims); King, supra at 472. The defendant also threatened both victims by telling them that they would be taken away from their families if they reported the abuse. Additionally, the victims were around the same age when the abuse began (seven or eight years old). See Commonwealth v. Aguiar, 78 Mass. App. Ct. 193, 200-201 (2010) (Aguiar) (cases factually similar where both victims were "between the ages of six and nine" when abused by the defendant); King, supra. Moreover, the sexual abuse was almost identical in nature. In

both instances, the defendant had vaginal intercourse with the
young girls, engaged them in oral sex,[7] and touched their
prepubescent chests, and each assault occurred almost
exclusively in the privacy of the bedroom in which the defendant
slept.  See Aguiar, 78 Mass. App. Ct. at 204.  In these
circumstances, J.R.'s testimony tended to show the defendant's
intent and inclination to commit the charged acts and it
corroborated the pattern of conduct testified to by the victim.
See Commonwealth v. Fleury-Ehrhart, 20 Mass. App. Ct. 429, 431
(1985); Hanlon, 44 Mass. App. Ct. at 817.  See also Commonwealth
v. Bemis, 242 Mass. 582, 585 (1922).  Contrast Commonwealth v.
Yetz, 37 Mass. App. Ct. 970 (1995) (prior consensual incident of
statutory rape not probative of conduct that gave rise to
forcible rape charge and, thus, was inadmissible).

Likewise, we reject the defendant's claim that the
approximately eight-year time period between the incidents
renders the evidence too remote.[8]  To be admissible, evidence of

---

[7] One difference is that the defendant forced his penis into
J.R.'s mouth, but was unable to do so with N.M. because N.M.
resisted.  Such differences, however, "do[] not render the
otherwise factually similar assaults distinct."  Aguiar, 78
Mass. App. Ct. at 201.

[8] Preliminarily, we note that, based on the defendant's 2010
assault with intent to rape indictment, based on an incident in
September, 2000, see note 16, infra, the motion judge could have
found that the time span between the incidents was actually less
than four years.  We need not rely on that possibility in
reaching our decision, however, because we agree with the motion

sexual assaults with persons other than the victim "must form a 'temporal and schematic nexus'" such that it shows a "common course of conduct regarding the victims." Hanlon, 44 Mass. App. Ct. at 818, quoting from Commonwealth v. Barrett, 418 Mass. 788, 794 (1994). "There is no bright line test, however, for measuring remoteness." Hanlon, supra at 819. Indeed, where the uncharged misconduct is, as here, part of a "'continuing course of related events,' or the conduct is unusual and particularly similar to the charged acts, the allowable time period is greater." Ibid. Here, because the defendant's pattern of conduct with N.M. and J.R. was distinctly similar, we do not believe the interval of time was too great. See id. at 819-820 (uncharged assaults separated by six and nine years, but intervening period not eventless); State v. John G., 100 Conn. App. 354, 360-365 (2007) (striking similarity between sexual assaults on defendant's young prepubescent granddaughters rendered evidence admissible despite eight-year gap); State v. Beckham, 145 N.C. App. 119, 121-122 (2001) (fourteen- and twelve-year gaps between two uncharged acts and the crime permissible given "striking similarities"); State v. McCombs, 410 S.C. 90, 99-101 (2014) (uncharged act preceding crime by

judge that "[b]ecause of the nature of th[e] abuse, it is not surprising that there was a lapse of many years between" the incidents, "as there was no evidence that an opportunity for the defendant to engage in this course of conduct existed . . . ."

eight years not too remote because incidents were similar in that they involved prepubescent girls at the defendant's home). Moreover, the apparent lack of access to N.M. or to J.R. during the intervening period in question bolsters our conclusion that the length of time between the conduct does not render the evidence too remote.[9]  See Commonwealth v. Kater, 432 Mass. 404, 414-416 (2000) (two "strikingly similar" crimes ten years apart not so temporally remote as to preclude admission of earlier crime where defendant spent most of that time in prison); Aguiar, 78 Mass. App. Ct. at 202 (no error in joinder, as conduct not too remote despite six and one-half year interval between assaults because defendant's ability to abuse victims was "completely dependent on establishing a close relationship with" and having access to them); State v. Jacob, 113 N.C. App. 605, 611-612 (1994) (evidence not too remote where defendant lacked access to daughter after divorce and where other daughter had not yet reached prepubescent age); State v. Hopkins, 698 A.2d 183, 186 (R.I. 1997) (ten-year time span between incidents did not render prior bad act evidence involving victims of similar age and relationship and similar modus operandi inadmissible).  Indeed, the gap in time reflects the fact that

---

[9] The evidence in this case suggested that during the eight-year gap in question, no young girl had a relationship with the defendant similar to that of J.R. or N.M., apparently because the defendant did not have access to such a potential victim.

for sex offenders like the defendant who prey on prepubescent girls within their family and household the pool of potential victims is significantly limited. Cf. 803 Code Mass. Regs. § 1.40(7) (2013) ("Offenders who limit their sexual offending behavior to Intrafamilial Victims have, in most cases, the fewest number of potential victims from which to prey upon"). In sum, we conclude that the defendant's need for access, coupled with the "similarity in the method by which the defendant committed the various offenses" (emphasis in original), Pillai, 445 Mass. at 182 (quoting from Commonwealth v. Mamay, 407 Mass. 412, 417 [1990]), renders the evidence admissible, notwithstanding the time span of as much as eight years between the incidents. See Commonwealth v. Sharpe, 454 Mass. 135, 144 (2009) (seven-year gap did not render evidence inadmissible where "there was a continuum of similar conduct throughout the relationship"); Hanlon, 44 Mass. App. Ct. at 820 (evidence not too remote despite nine-year gap because it "demonstrate[d] the ongoing nature of the defendant's behavior").

Finally, we reject the defendant's claim that the judges erred in allowing admission of the evidence because it was unduly prejudicial.[10] Contrary to the defendant's claim, J.R.'s

---

[10] The defendant contends that the highly prejudicial nature of J.R.'s testimony is evidenced by the testimony of J.R.'s

testimony here was neither overwhelming nor "extremely detailed."[11]  Moreover, before allowing J.R. to testify regarding the sexual abuse, the trial judge "gave careful limiting instructions to the jury."  Hanlon, 44 Mass. App. Ct. at 820. The trial judge reiterated the limiting instruction in his final charge to the jury and emphasized that the jury could not consider the evidence for the purpose of showing propensity.[12] See Pillai, 445 Mass. at 190 ("We presume that the jury followed

_____

sister at the hearing on the motion for new trial that two jurors, both under a mistaken belief that J.R.'s sister was J.R., approached the sister and said that "if it wasn't for [her], then [her] dad wouldn't be convicted."  Preliminarily, we note that given the brevity of J.R.'s testimony, we think it unlikely that the defendant was "convicted . . . based solely on" J.R.'s testimony.  In any event, however, an individual juror's statement concerning jurors' subjective mental processes "is not permissible to impeach a verdict."  Hanlon, 44 Mass. App. Ct. at 816.  Moreover, we agree with the judge that the jurors' statements do not indicate that the jury used J.R.'s testimony for improper purposes.

[11] Indeed, defense counsel argued in his closing argument that J.R.'s testimony was brief and, at times, lacked detail. Cf. Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006).

[12] Specifically, the trial judge instructed:  "You may consider whether [J.R.'s] testimony corroborates the testimony of [N.M.] and shows a common scheme and pattern of behavior, modus operandi, if you will, and you may consider it to the extent it shows motive and intent.  You may not consider this evidence for any other purpose.  Specifically, you may not use it to conclude that if you determine that the defendant committed acts with his daughter, it must follow that he committed acts with the complainant, as well.  Moreover, you may not take this testimony as substitute for the proof that the defendant committed the crimes charged in the indictments, nor may you consider it as evidence that the defendant has a criminal personality or a bad character."

the judge's instruction"); <u>Commonwealth</u> v. <u>Delong</u>, 60 Mass. App. Ct. at 528, 535-536 (2004). Accordingly, we conclude that the probative value of the evidence was not outweighed by the risk of unfair prejudice to the defendant.[13]

2. <u>Ineffective assistance</u>. Finally, the defendant's claim that the judge erred in denying his motion for new trial because his trial counsel provided ineffective assistance is meritless.[14] First, contrary to the defendant's claim, trial counsel renewed his objection to the admission of J.R.'s testimony on the first day of trial while discussing preliminary matters, and again immediately before opening statements.[15] In any event, because the prior bad act evidence was properly admitted, counsel did not provide ineffective assistance by choosing to "forgo a futile motion." <u>Commonwealth</u> v. <u>Delong</u>, 72 Mass. App. Ct. 42, 51 (2008).

---

[13] We also reject the defendant's claim that he was prejudiced by the prosecutor's use of the word "they" in her closing argument. Notwithstanding her use of the word "they," the prosecutor carefully explained to the jury the exact conduct underlying each indictment, thus eliminating the risk that jury would convict the defendant based on uncharged conduct.

[14] The trial judge also heard and denied the defendant's motion for new trial. Accordingly, we extend "special deference" to his denial of the defendant's motion. See <u>Commonwealth</u> v. <u>Grace</u>, 397 Mass. 303, 307 (1986).

[15] Indeed, the judge expressly stated that the defendant's rights, with respect to the prior bad act evidence, were saved.

Likewise, after reviewing the trial transcripts, we cannot say that counsel's decision to elicit information regarding the September, 2000, incident[16] on his cross-examination of J.R. was "manifestly unreasonable when made." Commonwealth v. Henley, 63 Mass. App. Ct. 1, 8 (2005). See Commonwealth v. Montez, 450 Mass. 736, 759 (2008) ("When counsel's strategic decisions are in issue, we must show 'some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful'" [citation omitted]). Trial counsel's assistance is not ineffective merely because another "attorney would now assemble the factual components of an attack on a cooperating witness's credibility differently than trial counsel . . . ." Commonwealth v. Walker, 438 Mass. 246, 251 (2002), quoting from Commonwealth v. Peloquin, 437 Mass. 204, 210 (2002). Here, defense counsel explained at sidebar that he was attempting to inquire into the 2000 incident to show J.R.'s bias.[17] Moreover, his questioning of J.R. regarding the incident was part of his

---

[16] In September, 2000, the defendant was arrested after he picked J.R. up by her neck and threw her on the bed. J.R. testified that the defendant did this because she refused to change her jeans, which he thought were too tight. In 2010, the defendant was indicted in Suffolk County for assault with intent to rape based on the September, 2000, incident. These charges were pending at the time of trial.

[17] More specifically, he suggested the possibility that she may have "puffed up" the 2000 incident to involve an attempted rape.

overall strategy to discredit J.R. by suggesting that she fabricated the allegations of sexual abuse.  Compare Commonwealth v. Coonan, 428 Mass. 823, 827-828 (1999).  In sum, the judge did not abuse his discretion in denying the defendant's motion for new trial based on ineffective assistance of counsel.

Judgments affirmed.

Order denying motion
for new trial affirmed.