MORAN, COMMONWEALTH vs., 101 Mass. App. Ct. 745

 
 COMMONWEALTH vs. JOSEPH MORAN.

101 Mass. App. Ct. 745
 February 3, 2022 - September 21, 2022

Court Below: Superior Court, Essex County
Present: Wolohojian, Henry, & Englander, JJ.

 

No. 21-P-255.

Enticement of Minor. Indecent Assault and Battery. Minor. Evidence, Prior misconduct, Similar incidents.

At the trial of indictments charging enticement of a child under sixteen and indecent assault and battery on a child under fourteen, the Superior Court judge did not err in admitting evidence that the defendant had previously engaged in similar activities with other male children between the ages of twelve and fourteen, where the form of the acts bore striking similarity (i.e., in both the charged offenses and prior incidents, the defendant measured the body parts of a male child between the ages of twelve and fourteen, told the child not to inform the child's mother about the incidents, and rubbed lotion or oil on the child); where, although the charged conduct occurred approximately nineteen to twenty-one years after the defendant's prior bad acts in another county and about five years after the defendant's release from prison, the time range was not outside the scope of timeframes deemed acceptable to show a pattern of operation or continuous course of conduct; and where the judge acted within her discretion in determining that the prior bad acts evidence was more probative than prejudicial (particularly given that the judge gave careful limiting instructions to the jury emphasizing that they were only to consider the prior acts evidence for the purposes of modus operandi and absence of accident and that they were not to consider the evidence for the purpose of showing propensity). [748-751]

Indictments found and returned in the Superior Court Department on January 18, 2018.

 The cases were tried before Elizabeth M. Fahey, J.

 Edward B. Gaffney for the defendant.

 Marina Moriarty, Assistant District Attorney, for the Commonwealth.

 HENRY, J. The defendant, Joseph Moran, appeals from convictions, after a jury trial in the Superior Court, of two counts of enticement of a child under sixteen, G. L. c. 265, § 26C (b), and two counts of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B. In a subsequent jury-waived trial, the same judge who presided over the jury trial found the defendant guilty of 

 Page 746 

the subsequent offense portion of the two counts of indecent assault and battery on a child under fourteen. On appeal, the defendant argues that the trial judge erroneously admitted certain evidence of prior bad acts. We affirm.

 Background. 1. Essex County acts. We recite the facts as the jury could have found them. The indictments in this case arise from incidents that occurred in Essex County when the male victim was twelve years old. 

 The defendant met the victim's mother in 2015 at her business (shop). The mother's relationship with the defendant began as something "financially lucrative for both of [them]," but over time, the relationship developed into a friendship. She understood the defendant to be a retired teacher. In addition to the other help the defendant was providing the family, he also offered to tutor the victim; after about seven to nine months of knowing the defendant, the mother agreed.

 The defendant also engaged in other activities with the victim, including visiting museums, cleaning the defendant's storage unit and vehicle, attending flea markets to sell the defendant's items, and organizing the back room of the mother's shop. While some of these activities initially included the victim's father [Note 1] and siblings, the activities eventually transitioned to just the victim and the defendant. 

 The victim was alone with the defendant in the defendant's storage unit "[a]bout five or six times." While alone at the storage unit together, the defendant gave the victim lotion that the defendant said would "help [the victim] get bigger . . . or go through puberty faster." The defendant put up a "folding door [with] gaps" before the victim began to apply the lotion. The defendant instructed the victim to take off the victim's own clothes and rub the lotion all over the victim's body, including the victim's legs, thighs, chest, stomach, and back. During some of the incidents where the victim rubbed lotion on his body, the victim wore only his underwear. During other instances, the victim wore nothing per the defendant's instructions. Afterwards, the defendant told the victim to "keep this between [them]" and not tell his mother. 

 At some point, the defendant himself applied lotion on the victim's arms, legs, and chest. The defendant's hands went "[a]bout two inches below [the victim's] belt and about two inches away 

 Page 747 

from the zipper to [his] pants" and then "down the sides" to his ankles. The defendant's hands also went "from just above [the victim's] belt . . . up [his] chest . . . [to] a few inches below the collar of [his] shirt." 

 In the defendant's storage unit or in the back of the mother's shop, the defendant would sometimes use a measuring tape to measure different parts of the victim's body or have the victim measure the victim's body. The defendant would then write the measurements on a clipboard that he kept with him. On one occasion, the defendant measured the victim's penis. The defendant pressed his left hand "slightly next to" the victim's penis and his right hand held the measuring tape while the victim held his penis pointing outward. The defendant told the victim that the lotion was working because the victim was "getting bigger." 

 The victim did not tell anyone about these incidents because he believed it was a secret between him and the defendant, who had told him to keep it a secret, and feared his parents might get mad at him or the defendant. Eventually, the victim told his mother about the incidents when his mother showed him a picture of the defendant from a website and told him that the defendant was a sex offender. The mother immediately contacted the police. 

 2. Other bad acts. The Commonwealth presented other bad act evidence through Lisa Jacobs Rothman, an assistant district attorney who had prosecuted the defendant for previously engaging in similar acts with four boys in Middlesex County. [Note 2] Rothman testified that the defendant "admit[ted] under oath that in September of 1996, with regards to a 12-year-old male child, that [the defendant] was alone with that child and told that child he was keeping a log book of people's growth . . . and asked if he could measure the child's body parts while the child was wearing boxer shorts," and that the defendant did then measure that child's body parts. Rothman also testified that the defendant "admit[ted] in regard to a 13-year-old male child that in the spring of 1998, he measured that child's arms, legs and waist, and asked the child to measure the child's own penis and write down how big it was." The Commonwealth also elicited testimony from Rothman that the defendant "admit[ted] that in September of 1998, that he, with regards to a 14-year-old male child, measured that child's body parts and had that child measure his own penis and give [the 

 Page 748 

defendant] the measurements." Finally, the Commonwealth elicited testimony from Rothman that the defendant "admit[ted] that with regards to a 13-year-old male child, that in late spring or early summer of 1997, he asked the child to measure the child's own penis, and also that [the defendant] used oil and massaged the leg, arm back and neck of that child," and that the defendant "admitted that he told the child not to tell his mother." The defendant objected to Rothman's testimony. 

 Discussion. "Generally, evidence of a defendant's prior misconduct may not be admitted to show bad character or propensity to commit the crime charged." Commonwealth v. Montez, 450 Mass. 736, 744 (2008). "However, such evidence may be admissible, if relevant, to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive." Commonwealth v. Barrett, 418 Mass. 788, 793-794 (1994). "When a court is presented with evidence of uncharged conduct by the defendant toward a child other than the complainant, the conduct in issue, to be admissible, must be closely related in time, place, and form of acts to show a common course of conduct by the defendant . . . so as to be logically probative." Commonwealth v. Dorazio, 472 Mass. 535, 540 (2015), quoting Barrett, supra at 794. [Note 3] 

 The defendant argues that the trial judge erroneously admitted evidence that the defendant had previously engaged in similar activities with other male children between the ages of twelve and fourteen. We disagree. The evidence of the defendant's acts in Middlesex County was "closely related in time, place, and form of acts to show a common course of conduct by the defendant . . . so as to be logically probative." Dorazio, 472 Mass. at 540.

 The form of the acts bore striking similarity here where, like he did in Middlesex County, the defendant measured the body parts of a male child between the ages of twelve and fourteen. The defendant also told the child not to inform the child's mother about the incidents. In addition, the defendant rubbed lotion on the child in this case, much like he rubbed oil on a child in Middlesex County. See Commonwealth v. Helfant, 398 Mass. 214, 227 (1986) (evidence of prior incident properly admitted when 

 Page 749 

defendant's conduct at issue and in prior incident "was remarkably similar" and thus "highly probative" as showing "a distinctive pattern of conduct"). See also Commonwealth v. Kater, 432 Mass. 404, 414-416 (2000); Commonwealth v. Brusgulis, 406 Mass. 501, 505-506 (1990).

 The defendant argues, nonetheless, that the prior incidents were not sufficiently close in time. The charged conduct in this case occurred in 2017, approximately nineteen to twenty-one years after the defendant's prior bad acts in Middlesex County and about five years after the defendant's release from prison. [Note 4] Given the defendant's release from incarceration, this time range is not outside the scope of timeframes previously deemed acceptable to show a pattern of operation or continuous course of conduct, thereby warranting the admission of the prior bad acts evidence. See Kater, 432 Mass. at 416 ("the length of time between the two crimes is not so temporally remote as to preclude admission of the earlier offense because [the defendant] spent most [i.e., eight years] of that ten-year period in prison"). See also Commonwealth v. Robertson, 88 Mass. App. Ct. 52, 56-57 & n.8 (2015) (rejecting argument that "approximately eight-year time period between the incidents renders the evidence too remote"); Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 820 (1998) (nine years between acts "not too remote, given the continuing nature of the pattern, and the striking similarity of each incident to the charged acts"). "There is no bright-line test for determining temporal remoteness of evidence of prior misconduct." Helfant, 398 Mass. at 228 n.13. Where the prior misconduct is "part of a continuing course of related events, or the conduct is unusual and particularly similar to the charged acts, the allowable time period is greater" (quotations and citation omitted). Robertson, supra at 56. See Helfant, supra at 228 & n.13. 

 We are unpersuaded that the fact that the charged acts and the prior bad acts here occurred in different counties rendered the defendant's prior bad acts inadmissible. In Dorazio, the Supreme Judicial Court held that it did not matter that the charged act occurred in the defendant's home and the alleged prior bad act occurred in a children's play area in a restaurant. Dorazio, 472 Mass. at 542. What was significant was that "the defendant allegedly committed the acts that took place at a location and time 

 Page 750 

when young children were separated from their parents and in circumstances where he was able to create a distraction before allegedly touching them." Id. Similarly, here, what is significant is the strikingly similar conduct, not the county where it occurred. 

 We note that in determining the admissibility of the other bad acts here, the trial judge quoted Hanlon, 44 Mass. App. Ct. at 818, for the proposition that such prior bad acts evidence "is only admissible if it is connected 'in time, place, or other relevant circumstances to the particular sex offense for which the defendant [was] being tried.'" [Commonwealth v.] King, 387 Mass. [464,] 470 [(1998)]." We do not consider this to be a substantively different standard from the one articulated in Barrett, 418 Mass. at 793-794, and Dorazio, 472 Mass. at 540-542. However, to avoid confusion, the better practice would have been to state the test as the Supreme Judicial Court has stated it, most recently in Dorazio.

 Finally, "[e]ven if the evidence [of prior bad acts] is relevant to one of [the allowed] purposes, the evidence will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). A trial judge has broad discretion in making these admissibility determinations, and the judge's rulings "are not disturbed absent palpable error." Commonwealth v. Keown, 478 Mass. 232, 242 (2017), cert. denied, 138 S. Ct. 1038 (2018), quoting Commonwealth v. Sylvia, 456 Mass. 182, 192 (2010). We conclude that the judge acted within her discretion in determining that the prior bad acts evidence was more probative than prejudicial. First, the defendant challenges whether the judge engaged in this analysis. While the judge did not address the issue in the written memorandum of decision, her oral remarks demonstrate that she did evaluate the issue. The acts described in the Middlesex County cases were so peculiar and so similar to the acts in this case that their probative value far outweighed any unfair prejudice. See Commonwealth v. Iguabita, 69 Mass. App. Ct. 295, 300-301 (2017) (priest's prior sexual acts with others, even if consensual, not unduly prejudicial; "evidence demonstrated a similar modus operandi by the defendant with the two women as with the victim"). In addition, the trial judge gave careful limiting instructions to the jury, emphasizing that they were only to consider the prior acts evidence for the purposes of modus operandi and absence of accident and that they were not to consider the evidence for the purpose of showing propensity. 

 Page 751 

Jurors are presumed to follow the instructions given. See Commonwealth v. Donahue, 430 Mass. 710, 718 (2000). We discern no error warranting a new trial.

 Judgments affirmed.

FOOTNOTES
[Note 1] We use "father" instead of "stepfather" because the victim referred to him as "dad." 

[Note 2] The jury were not told that Rothman had heard the defendant's admissions because she was the prosecutor in his case in Middlesex County. 

[Note 3] Even where a defendant's identity is not disputed, evidence of prior bad acts may be admissible to demonstrate the defendant's pattern of conduct to show modus operandi, intent, and absence of mistake. See Commonwealth v. Copney, 468 Mass. 405, 414 (2014); Commonwealth v. Jackson, 428 Mass. 455, 459 (1998), S.C., 468 Mass. 1009 (2014). 

[Note 4] The defendant was in custody within two months of the last of the earlier offenses. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.