NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-981

COMMONWEALTH

vs.

ALFREDO FUENTES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Superior Court, a jury convicted the defendant, Alfredo Fuentes, of assault with intent to rape a child and indecent assault and battery on a child under fourteen.[1] On appeal, the defendant contends that the judge erred by admitting prior bad acts evidence, the prosecutor's closing argument constituted reversible error, and the judge's response to a jury question was improper. We affirm.

---

[1] The defendant was initially indicted on two counts of aggravated rape of a child, and two counts of indecent assault and battery on a child under fourteen. Before trial, the second count of aggravated rape of a child was dismissed at the Commonwealth's request. During trial, one of the two counts of indecent assault and battery on a child under fourteen was also dismissed at the Commonwealth's request. The jury ultimately convicted the defendant of one count of the lesser included offense of assault with intent to rape a child, and one count of indecent assault and battery.

Background.  The defendant's convictions stem from sexual abuse he perpetrated against the victim while he was in a long-term relationship with her mother and living in the family's residences.  The victim, who was fifteen years old at the time of trial, met the defendant in 2010, when she was about six years old.[2]  The defendant lived for a period of time with the victim and her mother in Dorchester and South Boston, and moved out in January of 2016.

The assault with intent to rape occurred while the defendant lived in the Dorchester residence with the victim's family.  While sleeping in her room, the victim awoke with the defendant's body on top of her as he started to "move back and forth."  The victim "felt his penis in[side] [her] vagina," which "felt uncomfortable" and "hurt" her.  The victim did not recall how old she was on the date of this incident.

The victim initially did not disclose the above-referenced abuse, but subsequently wrote her mother a letter in which she revealed that the defendant "treated her as if she were his girlfriend . . . would kiss her and touch her parts . . . [and] would touch her buttocks and her vagina."  The victim's mother spoke with the victim and the defendant together about the letter.  As the mother asked questions, the victim "was crying

_____

[2] The defendant was approximately twenty-nine years old when he met the victim.

2

during the whole time." The victim's mother did not believe her, and thus the defendant continued living with the victim's family.

The indecent assault and battery occurred later in the South Boston residence. According to the victim, the defendant touched her breasts over her clothes while lying next to her on her brothers' bunk bed.

At trial, the victim testified to multiple incidents of uncharged conduct by the defendant. The victim testified that while she slept in her mother's bedroom in Dorchester with her mother, brothers, and the defendant, the defendant touched her breasts and put her hand on his penis under the covers while lying next to her. The victim further testified that on multiple occasions while she showered in both the Dorchester and South Boston residences, the defendant reached in and touched her breasts and vagina.

Discussion. 1. Prior bad act evidence. The defendant contends that the judge erred by admitting evidence of the defendant's uncharged conduct. We first note that the issue may not have been properly preserved for appeal.[3] Even assuming

_____

[3] The defendant opposed the Commonwealth's motion in limine to admit prior bad act evidence. However, during the motion hearing, defense counsel argued that one of the proposed prior bad acts fell outside the scope of relevance. Defense counsel also stated, "I guess it's a trial issue as to what will actually come in." When the judge asked if there was "[a]ny

arguendo that the issue was properly preserved, we discern no abuse of discretion. See Commonwealth v. McCowen, 458 Mass. 461, 478 (2010) (decision whether to admit prior bad act evidence rests within sound discretion of trial judge and will not be disturbed absent palpable error).

Evidence of a defendant's prior bad acts is inadmissible to show the defendant's "bad character or propensity to commit the crimes charged." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). It may be admissible, however, to show a "common

---

other reason why [she] should keep [the other prior bad act evidence] out," defense counsel responded that it was "being used to support . . . the charges," that the victim's statements about the uncharged conduct had varied, and that "we're getting more support for related bad acts than we are for the actual charged crimes" such that it "could convolute things for the jury." It thus does not appear that the defendant objected to the prior bad act evidence on the specific basis that he now asserts on appeal. To the extent that the defendant believed, as he now argues, that the judge erred in admitting an impermissible volume of uncharged conduct or too much detail, the better practice would have been to specify that objection either at the hearing on the motion in limine, or later at trial. See Commonwealth v. Repoza, 28 Mass. App. Ct. 321, 329 n.6 (1990) ("Objections are not ceremonial. The purpose . . . is to insure that an alleged error is brought clearly to the Judge's attention in order that the Judge may squarely consider and decide the question and rectify the error, if any" [quotation and citation omitted]). See also Commonwealth v. Almele, 474 Mass. 1017, 1018 (2016) ("A significant limitation on the preservation of rights remains, however: if a defendant fails to object to the admission of certain evidence at trial, his or her appellate rights are only 'preserved' if the specific issue at trial was the same issue at the motion in limine stage. . . . The better practice, therefore, is for a defendant to object at trial even if he or she has already raised an objection prior to trial").

4

scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive" (quotation and citation omitted). Commonwealth v. Robertson, 88 Mass. App. Ct. 52, 55 (2015). Such evidence, if relevant, "is admissible if its probative value outweighs the risk of unfair prejudice" to the defendant. Commonwealth v. Philbrook, 475 Mass. 20, 26 (2016).

Here, the evidence of the defendant's uncharged conduct was relevant and properly admitted for the limited purpose of showing the nature of the relationship between the victim and the defendant. See Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006) (in sexual assault cases, evidence of uncharged conduct may be admissible "to give the jury a view of the entire relationship between the defendant and the alleged victim"). Furthermore, it provided context for her delayed disclosure and alleged inconsistent statements. See Commonwealth v. Childs, 94 Mass. App. Ct. 67, 72 (2018) ("Once the jury had knowledge that the victim alleged this was part of an ongoing, continuous abusive relationship, the victim's actions and reactions make logical sense"); Commonwealth v. McKinnon, 35 Mass. App. Ct. 398, 404-405 (1993) (evidence of prior bad acts permissible to explain child victim's delayed disclosure of sexual assault). Had the jury been left with the false impression that the defendant sexually abused the victim twice in the approximately six years he spent living with her, "her testimony would make

5

little sense." Childs, supra. See Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 567 (2015) (evidence of defendant's uncharged conduct relevant to show pattern and defendant's sexual interest in child victim). That the judge did not explicitly state on the record that the probative value of the evidence outweighed the risk of unfair prejudice is of no consequence, as "[s]uch a determination [in the present case] is implicit in the judge's consideration of the tender of, and the objection to, the evidence and the judge's ultimate decision to admit it." Commonwealth v. Mahan, 18 Mass. App. Ct. 738, 741 n.1 (1984).

Contrary to the defendant's assertion, this is not an instance where the prior bad act evidence "overwhelmed" the case. The victim's testimony about the incident in her mother's bed where the defendant put her hand on his penis covered approximately two and one-half pages of the combined thirty-nine pages of her direct and redirect testimony. Thus, while the testimony contained some level of detail, it was brief, and again, the defendant did not object on this basis to its admission at trial. Further, the victim described the instances of the defendant touching her breasts and vagina while she was in the shower in general terms, mentioning only one specific incident in South Boston that occurred immediately before the charged conduct in her brothers' bunkbed. Contrast Dwyer, 448

6

Mass. at 128-129 (abuse of discretion occurred where jury heard detailed testimony of seven uncharged incidents of sexual assault, twenty-one out of sixty-five transcript pages of victim's testimony described uncharged conduct, cross-examination of victim focused primarily on uncharged conduct, and defendant's own testimony was devoted to denying uncharged conduct). In addition, the judge's repeated, comprehensive, and clear instructions both during trial and in her final charge to the jury clarified which of the incidents constituted uncharged conduct, specified the limited purpose for which the jury may consider that evidence, and mitigated any risk of prejudice.[4] See Commonwealth v. Bryant, 482 Mass. 731, 737 (2019) (jury presumed to follow limiting instructions on prior bad act evidence).

2. Prosecutor's closing argument. The defendant asserts that the prosecutor improperly vouched for the victim's credibility and appealed to the jury's sympathy in his closing

---

[4] The defendant's related argument that the prosecutor's references to the prior bad act evidence in his closing argument exacerbated the risk of unfair prejudice is unpersuasive. The prosecutor mentioned the uncharged conduct in response to the defendant's argument that the victim was not credible because of her inconsistent statements. The prosecutor did not exceed the bounds of permissible argument. Contrast Childs, 94 Mass. App. Ct. at 76 ("had the uncharged conduct been improperly admitted, the prosecutor's heavy use of it would establish the prejudicial nature of the error").

argument.[5]  As the defendant did not object to the prosecutor's

closing argument, we review "to determine if the statements were

error, and, if so, whether they created a substantial risk of a

miscarriage of justice."  Commonwealth v. Sanchez, 96 Mass. App.

Ct. 1, 9 (2019).  A substantial risk of a miscarriage of justice

exists where "we have a serious doubt whether the result of the

trial might have been different had the error not been made."

Commonwealth v. Sherman, 481 Mass. 464, 476 (2019), quoting

Commonwealth v. Azar, 435 Mass. 675, 687 (2002).  We consider

the challenged portions in the context of the entire closing,

the judge's instructions to the jury, and the evidence at trial.

See Commonwealth v. Martinez, 476 Mass. 186, 198 (2017).

     i.  Vouching.  During closing argument, the prosecutor made

the following remarks:

> "Credibility does matter and you absolutely, contrary
> to what [the] Defense says . . . have to ask yourself
> is there a reason this person would be untruthful.
> What reason is before you that [the victim] would be
> untruthful about this man raping her?  What motive
> does she have . . . What does she gain . . . In the
> evidence before you, nothing, she gains nothing by
> lying to you.  You have heard no evidence that she has
> a motive to lie about this, and you are absolutely the
> judges of who and what to believe . . .
>
> ". . .
>
> "And what of [the victim's] testimony would strike you
> as something wholly false?  If that were the case,

_____

[5] As explained above, the prosecutor's brief references to
properly admitted prior bad acts evidence in closing argument
did not constitute reversible error.  See note 4, supra.

8

wouldn't it sound better?  Wouldn't the details be the same every time?  Wouldn't it be a script?  Wouldn't she remember all the things that would help her be believed?  That's not what you saw.  You saw a 15-year-old answer questions the best she could, no more."

The defendant's contention that the prosecutor impermissibly vouched for the victim's credibility is unavailing.  Nowhere in the prosecutor's remarks did he "state or imply that he had knowledge independent of the jury, or assert any personal beliefs about the victim's credibility." Sanchez, 96 Mass. App. Ct. at 10.  Nor did the prosecutor improperly suggest or imply "that the [victim] should be afforded greater credibility by reason of [her] willingness to come into court and testify."  Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 180 (2008).  Compare Commonwealth v. Beaudry, 445 Mass. 577, 587-588 (2005).  Contrary to the defendant's assertion, "there is no categorical prohibition against suggestion by a prosecutor that a prosecution witness has no motive to lie."  Helberg, supra at 179.

Here, the prosecutor's comments were made in response to the defendant's argument in closing that the victim was not credible and that there was "no way" that the jury could find the defendant guilty based on "the inconsistencies and the variations" in her testimony.  See Commonwealth v. Mason, 485 Mass. 520, 539 (2020) (prosecutor is entitled to respond to

9

argument made by defense at closing); Sanchez, 96 Mass. App. Ct. at 10, quoting Commonwealth v. Sanders, 451 Mass. 290, 297 (2008) ("if defense counsel comments on a government witness's credibility during closing argument, it is proper for a prosecutor, 'within the limits of the evidence,' to argue why the jury should believe the witness").  Moreover, the judge instructed the jurors multiple times that they were the sole judges of the facts and credibility of the witnesses, they were to disregard any comments the attorneys may have made suggesting their personal beliefs regarding witnesses' credibility, and that closing arguments are not evidence.  "The jury are presumed to have followed these instructions."  Commonwealth v. Fernandes, 478 Mass. 725, 743 (2018).

ii.  Appeals to jury's emotions.  Second, the defendant contends that the prosecutor improperly appealed to the jury's emotions by holding up and referencing a photograph[6] of the victim at age eight or nine and repeatedly referencing her age.[7] We disagree.

---

[6] The Commonwealth offered the photograph as an exhibit during the direct testimony of the victim's mother.

[7] While the defendant now argues that the Commonwealth used the photograph of the victim during closing argument for a different purpose than it proposed in its motion in limine, he did not object at trial to the admission of the photograph nor its use during closing argument.  See Commonwealth v. Maynard, 436 Mass. 558, 570 (2002) (that defendant did not object at trial supports inference that prosecutor's actions were "not so egregious and

10

On the record before us, we discern no error. There is no indication that the prosecutor did anything more than briefly display a trial exhibit to the jury. Furthermore, the judge instructed that the jury "must not be influenced by . . . sympathy," and that it "would be improper for [the jury] to consider any personal feelings . . . or sympathy." These instructions mitigated any risk that the prosecutor's use of the photograph would "sweep [the] jurors beyond a fair and calm consideration of the evidence." Commonwealth v. Perry, 254 Mass. 520, 531 (1926). See Commonwealth v. Kapaia, 490 Mass. 787, 799 (2022) ("even standard instructions, such as those given in this case, contribute to mitigating the harm created by improper appeals to sympathy").

3. _Judge's response to jury's questions_. During deliberations the jury sent two questions to the judge. The jury asked, "What were the trigger mechanisms that initiated these indictments," and "Who provided the initial complaint." The judge sent the following written answer in response: "Our rules normally permit testimony only as to the complainant's first report (page 13 of the instructions). You have all the evidence." Assuming without deciding that this issue was

---

prejudicial as [the defendant] now claims"). See also Almele, 474 Mass. at 1018.

11

properly preserved,[8] we discern no error or abuse of discretion in the judge's response.  See Commonwealth v. Starkweather, 79 Mass. App. Ct. 791, 804 (2011), quoting Commonwealth v. Johnson, 429 Mass. 745, 753 (1999) ("The necessity, extent, and character of supplemental instructions in response to a jury request are matters within a trial judge's discretion").

The defendant asserts that the judge's response improperly lent credibility to the victim by implying that she made multiple reports of abuse that were not before the jury.  We disagree.  The judge instructed that the jury "[had] all the evidence."  Also, the judge expressly referred the jury to page thirteen of her instructions, which contained a correct instruction on first complaint.  Indeed, the judge provided comprehensive, clear, and repeated instructions to the jury regarding the first complaint doctrine both during trial and in her final charge.  "[W]e ascribe a certain level of sophistication to the jury" (quotation and citation omitted), Kapaia, 490 Mass. at 805, and presume that they followed the

---

[8] Here again, the defendant failed to object to the judge's action.  Although defense counsel proffered a different proposed response to the jury question, she did not object to the version given by the judge.  In any case, where the instruction did not constitute error, we need not dwell further on the correct standard of review.

12

judge's instructions.

Judgments affirmed.

By the Court (Neyman, Shin & Smyth, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  February 27, 2023.

---

[9] The panelists are listed in order of seniority.