NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-762

COMMONWEALTH

vs.

SCOTT M. KARWIEL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bifurcated trial in the Superior Court, the defendant was convicted of operating under the influence of intoxicating liquor (OUI), fifth offense,[1] and negligent operation. The defendant appealed from the judgments and later, represented by new counsel, moved for a new trial, arguing that his original attorney had failed to provide him with effective assistance at trial. The trial judge denied the defendant's motion and he appealed from that ruling. After considering the defendant's consolidated appeals from his convictions and from the order denying his motion for a new trial, we affirm.

_____

[1] The defendant was convicted by a jury of the OUI; he waived his right to a jury trial on the subsequent offense portion of that indictment.

Background.  As part of his pretrial preparation, the defendant's trial counsel obtained copies of medical records related to the defendant's past treatment for, among other conditions, back pain and prior back surgery.  The Commonwealth moved in limine to preclude the introduction of the records on relevancy grounds,[2] arguing that the defendant had not demonstrated that the records would "aid the jury in any finding of fact relating to this case."  Defense counsel explained that the records were relevant because the Commonwealth intended to offer evidence of the defendant's unsatisfactory performance on field sobriety tests, and the records would "go directly to [the defendant's] ability to do physical tests" and establish that the defendant had "been disabled for a very long time."[3]  After reviewing the proffered records, however, the judge concluded that (1) some of the records were not temporally relevant, and (2) even where temporally relevant, there was nothing in the records to indicate a causal connection between the defendant's medical condition and his performance on the field sobriety

---

[2] The Commonwealth did not challenge the authenticity of the records, which were certified under G. L. c. 233, § 79G.

[3] Defense counsel did not argue that the records were admissible for any other purpose, and the judge does not appear to have considered the admissibility of the records on any other basis.  The defendant did not challenge the judge's ruling in his motion for a new trial and does not do so on appeal.

tests, at least without expert testimony.  The judge excluded the records.

At trial, the Commonwealth introduced evidence of the defendant's intoxication through the arresting trooper.  This evidence included the trooper's observations of the defendant's car, which had left the travel lanes of Route 495, hit a sign, and come to rest on the median, perpendicular to the roadway.  It also included the trooper's observations of the defendant, who told the trooper that the accident was the result of his "check engine light" coming on.  The trooper testified that the defendant was unsteady on his feet, swaying, and leaning on his car; smelled "strong[ly]" of alcohol; and had bloodshot and glassy eyes with "pinpoint pupils."  The defendant spoke in a way that was "incoherent, and when it did make sense it was slurred."  Additionally, the trooper found a half-empty eighteen-pack of cold beer in the passenger compartment behind the front passenger seat.  The defendant denied drinking.[4]

The trooper further testified that after he made the observations summarized above, he asked the defendant to perform field sobriety tests.  According to the trooper, the defendant agreed, telling the trooper that "he had a back injury and a thoracic injury."  In response to the trooper's question whether

---

[4] All the beers in the car were unopened.

3

those conditions would prevent the defendant from participating in field sobriety tests, the defendant said, "no." The defendant attempted both of the field sobriety tests the trooper offered -- the nine-step walk-and-turn and the one-leg stand -- but did not complete either one of them to the trooper's satisfaction because he was stumbling.

Defense counsel cross-examined the trooper and, after the prosecution rested its case, called the defendant's cousin to testify about his interactions with the defendant earlier in the day on which the defendant was arrested. In doing so, counsel's focus was on discrediting and explaining the evidence of the defendant's intoxication at the time of the accident. For example, his cross-examination underscored the trooper's awareness of the defendant's back and thoracic injuries at the time he administered the field sobriety tests, suggested that the defendant may have understated the impact of those conditions on his ability to do the tests that were offered, and elicited the testimony that suggested that the defendant was both "one hundred percent" cooperative with the trooper and able to walk unaided when not performing field sobriety tests. Defense counsel also elicited testimony from the defendant's cousin explaining the eighteen-pack of beer found in his car and, more generally, the defendant's sobriety on the day of the incident. In addition, defense counsel elicited evidence from

4

the defense witness about the fact and timing of the defendant's prior back surgeries.

After the defendant's convictions of OUI, fifth offense, and negligent operation, he filed a motion for new trial based on the exclusion of his medical records, supported by an affidavit of his trial counsel. The motion was not, however, supported by any expert opinion evidence tying the substance of the excluded medical records to the defendant's ability to perform the field sobriety tests administered to him before his arrest in this case. On appeal, the defendant's sole contention is that he was deprived of the effective assistance of counsel at trial.

Discussion. "[A] motion for a new trial is addressed to the sound discretion of the trial judge" (citation omitted). Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015), S.C., 478 Mass. 189 (2017). Because the judge who ruled on the motion for a new trial was also the trial judge, we extend "special deference" to her denial of the motion. Commonwealth v. Robertson, 88 Mass. App. Ct. 52, 59 n.14 (2015), quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986). Our review is for an abuse of discretion, meaning that we consider whether it resulted from "'a clear error of judgment in weighing' the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives.'" L.L. v.

Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008).  In assessing whether trial counsel's performance deprived the defendant of his right to effective assistance of counsel, we apply the familiar standard articulated in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), asking whether (1) that performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and (2) if so, "whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."

Here, in view of the narrow scope of the defendant's motion for a new trial, we discern no abuse of discretion in the judge's denial of the defendant's motion.  We need not decide whether, under the first prong of the Saferian test, 366 Mass. at 96, trial counsel's performance fell measurably below accepted standards of practice.  This is because, even assuming arguendo that trial counsel's failure to obtain an expert to explain the medical records amounted to substandard practice (a conclusion that we do not reach), the defendant failed to satisfy the second prong of that test by demonstrating that he was prejudiced as a result of his counsel's misstep.

First, where the motion for a new trial was not supported by an affidavit or other evidence to show that the available medical records would have supported the defendant's claim that

6

his physical condition disabled him from performing the tests administered by the trooper, we cannot say that "better work might have accomplished something material for the defense" in this case. Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). Cf. Commonwealth v. Baran, 74 Mass. App. Ct. 256, 274-276 (2009) (affirming order allowing motion for new trial where defendant supported ineffective assistance claim with expert testimony outlining how trial counsel could have undermined impact of inculpatory evidence).

Second, even if that were not the case, in light of the strong evidence of intoxication and the jury's awareness through both the trooper and the defendant's witness that the defendant had a history of back injuries, it is difficult to imagine that admission of the excluded medical records would "have accomplished something material for the defense." Satterfield, 373 Mass. at 115. At a minimum, the defendant's motion failed to establish the second prong of the Saferian test.

Accordingly, the judge was within her discretion in denying the motion.

Judgments affirmed.

Order denying motion for a
  new trial affirmed.

By the Court (Meade, Neyman &
  Hand, JJ.[5]),

Assistant Clerk

Entered:  May 15, 2024.

---

[5] The panelists are listed in order of seniority.