NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-689

COMMONWEALTH

vs.

ALVYS MARINO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury trial, the defendant was found guilty on multiple counts:  four counts of rape, photographing an unsuspecting person in the nude, assault and battery on a family or household member, and threats to commit a crime.  On appeal, the defendant contends that the trial judge erred in admitting evidence of uncharged conduct by the defendant.  We affirm.

We summarize the evidence presented at trial as the jury could have found it.  See Commonwealth v. Hinds, 494 Mass. 681, 682 (2024).  The defendant and the victim were married and had two children together.  In or around May 2013, the defendant put his hand on the victim's thigh and started to rub her, but the

victim pushed his hand away and told him that she never wanted to be sexual with him again because of an affair he had with another woman. The defendant then pulled down the victim's pajama bottoms and vaginally raped her. After the rape, the defendant told the victim that if she ever told anyone about the rape he would chop her up with a knife and bury her and that she would never see her kids again.

In 2017, the defendant yelled at the victim for leaving dirty dishes in the sink and grabbed her by the neck. The victim repeatedly asked the defendant to stop. He then anally raped the victim.

The defendant again vaginally raped the victim on May 17, 2019, filming the sexual assault with his cellphone over her protestations. A subsequent search of the defendant's cellphone located two video recordings of female genitalia, dated May 17, 2019.

In 2020, the defendant repeatedly threatened the victim and told her that she could only get a divorce on his terms, that she could not get legal counsel, and that she could not tell anyone about the abuse. In March of that year, the defendant again yelled at the victim about the kitchen being messy, and he repeatedly punched her. The defendant then vaginally raped the victim again in May of that year. The victim testified that

2

over the course of their relationship, the defendant vaginally raped her "somewhere around 70 times."

After their divorce was finalized in February 2021, the victim planned to relocate to Florida. She went there to start looking for a new home, and in late June 2021, the defendant brought the children to Florida to begin acclimating them to their new home. They all stayed in a hotel together. At that time, the defendant learned that the victim might be romantically involved with someone else. While at the hotel pool, the defendant struck the victim on her collarbone and upper chest area with his palms, and hotel security approached the defendant. The defendant instructed the victim to go back to the hotel room with the children, which they did. When the defendant returned to the hotel room a few minutes later, he punched the victim in the nose.

For the next fourteen hours, the defendant held the victim and the children captive in the hotel room, the car, at McDonald's, and at Walgreens. He struck the victim multiple times; he threatened to rape her, to kill and dismember her if she did not cooperate with the rape, and to kill her if she ever told anyone. He also told the children that if they told anyone about what happened that day, he would hide them with their grandmother and cut the victim with his knife.

The victim was able to send a text message to 911 asking for help, and in response, Orlando police officers came to the hotel room and arrested the defendant.  The defendant was charged with multiple offenses in Florida, all of which ultimately were dismissed.

Discussion.  On appeal, the defendant argues that the judge's rulings regarding the admission of evidence regarding uncharged conduct, including that the defendant had raped the victim around seventy times and the events that occurred in Florida, were overly prejudicial and improperly admitted.[1] "[E]vidence of prior or subsequent bad acts may not be offered to prove bad character or criminal propensity" (quotation and citation omitted).  Commonwealth v. Lally, 473 Mass. 693, 712 (2016).  "However, such evidence is admissible when offered for another purpose . . . , so long as its probative value for that purpose is not outweighed by its prejudicial effect" (citation omitted).  Commonwealth v. Welch, 487 Mass. 425, 442-443 (2021).  See Mass. G. Evid. § 404(b)(2) (2026).  Permissible purposes include to demonstrate the hostile nature of the relationship

---

[1] The Commonwealth argues that the defendant's claims were not properly preserved, that he has thus waived his argument regarding prejudice, and that this court should only review the admission of the evidence for a substantial risk of a miscarriage of justice.  See Commonwealth v. Belnavis, 104 Mass. App. Ct. 798, 801 (2024).  We need not address this issue because we find that the admission of the evidence was proper.

4

between the victim and the defendant, see Commonwealth v. Butler, 445 Mass. 568, 575 (2005), the defendant's pattern of conduct, see Commonwealth v. Robertson, 88 Mass. App. Ct. 52, 55-56 (2015), and to rebut the defendant's theory of the case, see Commonwealth v. Richardson, 423 Mass. 180, 187-188 (1996).

The determination whether to admit such evidence is "committed to the sound discretion of the trial judge," which a reviewing court will not disturb absent "palpable error" (citation omitted). Commonwealth v. McCowen, 458 Mass. 461, 478 (2010). Admitting the victim's general statement that she had been raped dozens of times by the defendant and the testimony concerning the events that occurred in Florida was not error. The evidence was admissible to show the hostile nature of the relationship and the defendant's pattern of threatening the victim to prevent her telling anyone about the incidents. See Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 567 (2015). Furthermore, the defense theory at trial was that the victim's accusations were motivated by anger at the defendant and a desire to gain advantage in civil cases. At trial, the defendant attacked the victim's credibility based on her delay in reporting many of the assaults; evidence describing the atmosphere of fear and abuse which the defendant had cast over his relationship with the victim thus had amplified probative value in explaining that delay to the jury. See Richardson, 423

5

Mass. at 187-188 (permitting prior bad act evidence to rehabilitate witness "by explaining why, after a long period of silence, [the victim] complained of the defendant's conduct" [citation omitted]). We also note that the Florida events, which occurred approximately two years before the trial, were not excessively remote in time. See Commonwealth v. Scullin, 44 Mass. App. Ct. 9, 15-16 (1997) (prior bad acts of similar misconduct two and one-half years before charged assault not so remote in time "as to render the evidence inadmissible").

We conclude, contrary to the defendant's assertion, that the judge appropriately balanced the probative weight of the evidence with the risk of unfair prejudice. Counsel discussed the admissibility of the evidence with the judge multiple times prior to its admission, and the record demonstrates that the judge carefully considered the evidence, weighed the relevant factors, and provided the jury with clear limiting instructions, thus mitigating any risk of undue prejudice to the defendant.[2] See Commonwealth v. MacCormack, 491 Mass. 848, 865 (2023) (admission of prior bad acts evidence "for limited purposes and with a clear, contemporaneous limiting instruction" [citation omitted] not abuse of discretion).

---

[2] At the suggestion of defense counsel, the judge excluded some evidence, only allowing the victim to testify in general form as to the history of abuse.

Finally, even if admitting the evidence was an abuse of discretion, it was not prejudicial. In addition to detailed descriptions of the defendant's charged rapes, assault, and threats, the jury heard compelling evidence of the defendant's consciousness of guilt in the recording of a telephone call between the defendant and the victim. On the call, the defendant said that the victim had been "taking the benefit" of marriage, including the money and comforts, and that he therefore had "fucked [her] because [she was] still married to [him]." When the victim said that what he had done was called spousal rape, the defendant responded that he didn't care what it was called and that the victim's only recourse would have been to leave the marriage. Later in the call, the defendant stated, "You fucking decided to be my wife, you took that vow, that oath or whatever, you signed that contract. That includes fucking sex . . . ."

The jury could have viewed the recording as tantamount to a confession by the defendant. Thus, the bad act evidence "did

not influence the jury, or had but very slight effect" (citation omitted).  <u>Commonwealth</u> v. <u>Chalue</u>, 486 Mass. 847, 868-869 (2021).

<u>Judgments affirmed</u>.

By the Court (Meade,
  D'Angelo & Tan, JJ.[3]),

Clerk

Entered:  May 6, 2026.

---

[3] The panelists are listed in order of seniority.