NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-547

COMMONWEALTH

vs.

JEFFREY E. KNIGHT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was a middle-school teacher.  Following in-class incidents involving the same victim at different ages, a jury convicted the defendant of counts two and three of a four-count complaint, charging indecent assault and battery on a child under fourteen and indecent assault and battery in violation of G. L. c. 265, §§ 13B and 13H.  A second count alleging indecent assault and battery on a child under fourteen involving the same victim (count one) was dismissed at the request of the Commonwealth, and the jury returned a not guilty verdict on an additional count charging assault and battery (count four).  We consider both the defendant's direct appeal from the judgments of conviction and his appeal from the order

denying his motion for a new trial and request for postconviction discovery. We affirm.

Background. The victim, whom we will call Maya, was a student in the defendant's eighth-grade science, technology, engineering, and mathematics (STEM) class and was thirteen at the time of the first alleged assault and fourteen at the time of the second. The class involved hands-on work and "kind of shop stuff." Maya testified that she felt uncomfortable in the defendant's class when he looked down her shirt, which he did to girls "every time [they] were cleaning up," and that, during an eighth-grade project with Legos that formed the basis for count three (Lego incident), he came to stand behind her, straddling her back leg, with his body pressed against a portion of her back and her buttocks. Maya testified that the defendant often positioned himself against her like this.

As to the conduct alleged in count two, Maya testified that, in December of eighth grade, she was using a handsaw to cut wood as part of a sled-making project when she asked the defendant to finish a cut for her (sled incident). The defendant pressed his body against the back of Maya's body and she could feel his erect penis in the crack between her buttocks.

Additional facts relevant to specific arguments are detailed below.

2

Discussion.  The defendant has raised many arguments. Specific arguments not mentioned have been considered and determined not to require discussion.  See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

1.  Prior bad acts.  Evidence of a defendant's prior bad acts may be admissible for nonpropensity purposes, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Commonwealth v. Teixeira, 486 Mass. 617, 626 (2021), citing Mass. G. Evid. § 404(b)(2) (2020).  "Even where relevant, prior bad act evidence 'will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant.'" Id., quoting Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). Such evidence has probative value when it "show[s] a common pattern or course of conduct" and is "sufficiently related in time and location to be logically probative."  Commmonwealth v. King, 387 Mass. 464, 472 (1982).

In weighing the risk of unfair prejudice, a court "tak[es] into account the effectiveness of any limiting instruction." Commonwealth v. Chalue, 486 Mass. 847, 866 (2021).  "On appeal, the decision will stand absent a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  Teixeira, 486 Mass. at 627.

3

We grant trial judges "great latitude and discretion" to weigh the probative value of bad act evidence against the potential for prejudice (citation omitted).  Chalue, supra at 869.

a.  Pretrial ruling, Althea's prior bad act testimony. Before trial, the Commonwealth moved to admit bad act testimony from three named witnesses:  Althea, Edith, and Jade (all pseudonyms).  The defendant filed a motion "to preclude the Commonwealth from introducing any bad act evidence and all references to any of the defendant's prior or subsequent bad acts as impeachment evidence"; it named no witnesses.  Althea, Edith, and Jade later appeared on the Commonwealth's witness list.

At the hearing, defense counsel introduced the issue by telling the judge, "[t]he big issue in the prior bad acts is going to be they want to call . . . [Althea]."  The remainder of that hearing and the judge's written order addressed only Althea's anticipated testimony.  During the hearing, the judge said, "[i]f there's a pattern of conduct with [Maya] where he had alleged with other girls gone up behind them during a school project, pressed his body against them, and they felt an erect penis that is a modus operandi, that is a pattern of conduct that I will allow in."  In his ruling, the judge excluded as unfairly prejudicial additional bad act testimony from Althea

4

related to an incident where the defendant allegedly grabbed her breast in a back room, away from the rest of the class.[1]

We review the admission of Althea's prior bad act testimony for prejudicial error and find none. See Commonwealth v. Grady, 474 Mass. 715, 719-720 (2016). Althea testified that, like Maya, she had been a student in the defendant's seventh-grade STEM class; like Maya, she felt the defendant press his erect penis against her buttocks; like Maya, this happened to Althea when she was working on shop-type projects. Before admitting this testimony, the judge properly balanced the probative value against the prejudicial nature and concluded that the evidence "suggests that, rather than being an isolated incident, the [d]efendant's conduct towards [Maya] was part of his modus operandi for selecting and assaulting female students under the pretext of helping them with class work," and was admissible "to negate the defenses that the [d]efendant's conduct was accidental or mistaken for assaultive when it really was not." The judge noted that the behaviors against Althea and Maya "are

---

[1] We are not persuaded that "the prosecutor incorrectly represented that [Althea] would be the only prior bad act witness." This position is inconsistent with the Commonwealth's witness list and with argument at the prior bad act hearing, and is not the only reading of the cited portion of the trial transcript. While the record amply demonstrates that the parties devoted most of their attention to litigating the admissibility of Althea's testimony about the defendant's bad acts, it also demonstrates that the defense were on notice of the other witnesses.

sufficiently connected because they are factually similar in a number of key ways," including the girls' similar ages and their presence in the defendant's STEM classes.  See Commonwealth v. Moran, 101 Mass. App. Ct. 745, 748 n.3 (2022).

Balancing the probative value of the evidence against the risk of unfair prejudice, the trial judge determined that "[t]he probative value of the in-classroom conduct is substantially greater than its risk of unfairly prejudicing" the defendant and noted that a limiting instruction would be given "to further reduce any risk of unfair prejudice."  See Mass. G. Evid. § 404(b)(2) (2021).  He then gave a forceful and complete limiting instruction before Althea testified, mitigating any prejudice.  See Commonwealth v. Dorazio, 472 Mass. 535, 542 (2015); Commonwealth v. Montez, 450 Mass. 736, 746 (2008).

b.  Additional bad act testimony.  In addition to Althea's testimony about the defendant's pressing his penis against her buttocks, Althea and three other witnesses testified about other bad acts by the defendant.

i.  Althea's additional testimony.  Althea testified that: (1) more than once, she saw the defendant looking at other girls' buttocks in a way that made her feel uncomfortable; (2) the defendant engaged in a physical altercation with one male student and put his hands on another, threatening to "put [his] head through this fucking wall"; and (3) Althea heard the

6

defendant make crude comments about women and comment to another student about that student's body.

ii. Edith's testimony. Another female former student, Edith, testified that, for female students, the defendant would "come over and approach you from behind and kind of assist your hands as his arms, like, wrapped around you," and that the "full length of his arm" would be "caressing [her] arm and upper back" in a way that she found "uncomfortable and intimidating."

iii. Jade's testimony. A third female former student, Jade, testified without objection that the defendant leaned over her and other girls when they were working on projects in STEM class; that his shirt touched her back and she felt uncomfortable; that she felt his "front privates" against her buttocks; and that he looked at girls' breasts in class. She also described the defendant's anger in class, saying "it still honestly affects me" and characterizing the whole class as "intimidate[d]."

iv. James's testimony. A male former student, James (also a pseudonym), echoed the testimony about the defendant's looking at the female students' buttocks and testified about the defendant's having female students pick up fallen pencils. James also testified that the defendant had threatened to "shove [James's] head through a wall" and that the defendant was "angry" in class.

7

In all, four women (including the victim) testified that they had experienced an unwanted touching by the defendant during a STEM class when he was their seventh or eighth-grade teacher. Three women and a man testified that the defendant was visibly angry in class and threatened male students with physical violence. From a review of the record, including the transcripts, we conclude that neither the appearance of these witnesses nor the substance of their testimony came as a surprise to the defendant. While these witnesses' testimony was not specifically challenged in the defendant's motion in limine, and therefore that motion did not preserve the issue for appeal, see Grady, 474 Mass. at 719-720, the judge determined that its probative value was not outweighed by the danger of unfair prejudice. See Commonwealth v. Samia, 492 Mass. 135, 148 (2023) (absent explicit weighing of particular evidence, determination of admissibility "is implicit in the judge's consideration of the tender of, and the objection to, the evidence and judge's ultimate decision to admit it" [citation omitted]).

For the objected-to statements, we review any error under the prejudicial error standard. Commonwealth v. Cruz, 445 Mass. 589, 591 (2005). "This requires a two-part analysis: (1) was there error; and (2) if so, was that error prejudicial." Id. "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect.'" Id., quoting Commonwealth v.

8

Flebotte, 417 Mass. 348, 353 (1994). We review unobjected-to portions of the testimony for a substantial risk of a miscarriage of justice, asking whether the error, if any, was "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error" (citation omitted). Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

"Prior bad acts involving someone other than the victim are admissible so long as they are connected in time, place, or other relevant circumstances to the particular sex offense for which the defendant is being tried" (quotation and citation omitted). Commonwealth v. Robertson, 88 Mass. App. Ct. 52, 55 (2015). In a case of sexual assault, testimony about prior assaults that took place in similar circumstances, with similar-aged victims, and were "almost identical in nature," "tend[s] to show the defendant's intent and inclination to commit the charged acts and [] corroborate[s] the pattern of conduct testified to by the victim." Id. at 55-56. "To be admissible, evidence of sexual assaults with persons other than the victim must form a temporal and schematic nexus such that it shows a common course of conduct regarding the victims" (quotation and citation omitted). Id. at 56.

We have little difficulty concluding that the challenged evidence about the defendant's approaching female students from

9

behind, leaning over them, and pressing his body into them was probative, and the defendant does not argue otherwise.  We turn then to the second step and ask whether the judge erred or abused his discretion in finding that its probative value was not "outweighed by the risk of unfair prejudice to the defendant" (quotation and citation omitted).  Teixeira, 486 Mass. at 626.

The trial judge did not err in admitting this testimony.  As he concluded, the challenged testimony was relevant to disprove defenses of mistake or accident, to establish a common plan or pattern of behavior, and to show the defendant's modus operandi.  Where the defense was that Maya either fabricated the assaults or, alternatively, misunderstood what she felt, mistaking a measuring tape (sometimes referred to as a ruler) for an erect penis, the probative value of the challenged testimony was not outweighed by the risk of unfair prejudice.  Furthermore, intentional touching was an element of the two offenses of which the defendant was convicted, see Commonwealth v. Melo, 95 Mass App. Ct. 257, 261-262 (2019), making evidence of a common plan or pattern of touching female students in this manner highly probative.  Against that backdrop, evidence that the defendant stood too close to other female students, put his arms around them, approached them from behind, pressed his body into the backs of their bodies, and breathed heavily close to

10

their faces, was, as the trial judge ruled, probative of a common plan and to negate these defenses. See Commonwealth v. Feijoo, 419 Mass. 486, 494-495 (1995) (evidence of behavior with other students would have been admissible at separate trials where defendant karate teacher used relationship with students and similar modus operandi to persuade each to engage in sexual conduct with him). In the circumstances, the danger of unfair prejudice did not outweigh the probative value of this evidence.

The defendant also challenges testimony about non "modus operandi" bad acts, including testimony about the defendant's other inappropriate behaviors toward female students and testimony about his angry or violent threats to male students. Like the trial judge, we conclude that the latter should not have been admitted beyond what was necessary to explain the students' reluctance to come forward with their allegations. But these statements collectively did not give rise to a substantial risk of a miscarriage of justice. See Alphas, 430 Mass. at 13.

The defendant neutralized some of this testimony by agreeing that "for effect because [he's] thinking about their safety," he "yelled at students at times." The challenged testimony amounted to a small portion of the trial evidence and in this context -- in which the charged crimes did not involve angry behavior and the defendant chose to testify, giving the

11

jury an opportunity to see his demeanor -- did not threaten to overwhelm or distract from the more serious crimes for which the defendant was on trial. Finally, the students' testimony about the defendant's temper was cumulative, not only of his own testimony, but also of the principal's.

2. Cross-examination of defendant. The defendant testified at trial. On cross-examination, the prosecutor asked him three questions about whether either Maya or Althea had reasons to fabricate their testimony about him. Defense counsel did not object.

"It is improper to ask a witness to comment on the credibility of other witnesses"; in so doing, "a lawyer implies to a jury that differences in the testimony of the witness and any other witness could only be the result of lying and not because of misrecollection, failure of recollection or other innocent reason" (quotations and citation omitted). Commonwealth v. Long, 17 Mass. App. Ct. 707, 708 (1984). These three questions were improper.[2]

Although improper, in consideration of the entire record, these few questions did not give rise to a substantial risk of a

_____

[2] The Commonwealth's position in its brief that the "questions would have been better left unsaid" is not a sufficient acknowledgement of the error.

12

miscarriage of justice.[3]  There were only three of them; they did not become a theme of the cross-examination; they were consistent with the defense theory that Maya fabricated the assaults; and they were not mentioned by the prosecutor in closing.[4]  Moreover, the defendant was not put in a situation where he was required to testify that another witness was lying. He handled the questions intelligently and avoided claiming other witnesses were not truthful.  Compare Commonwealth v. Sanchez, 96 Mass. App. Ct. 1, 5-7 (2019) (no prejudicial error where prosecutor asked defendant five questions about whether victim had "lied," as evidence was otherwise compelling; defense was that victim did not tell truth; and prosecutor did not refer to testimony in closing), and the cases collected in Commonwealth v. Johnson, 412 Mass. 318, 328 (1992) (same), with Long, 17 Mass. App. Ct. at 707-708 (asking defendant at least a

---

[3] We decline the defendant's invitation to review for prejudicial error.  "An objection at the motion in limine stage will preserve a defendant's appellate rights only if what is objectionable at trial was specifically the subject of the motion in limine."  Grady, 474 Mass. at 719.  This rule applies only where the defendant "has already sought to preclude the very same evidence at the motion in limine stage, and the motion was heard and denied."  Id.  Although the defendant filed a pretrial motion to preclude the Commonwealth from asking witnesses "for an opinion regarding the credibility of another witness," the motion was neither heard nor ruled on.  In the circumstances, it was incumbent on trial counsel to object at trial in order to protect the defendant's appellate rights.

[4] Having reviewed the Commonwealth's closing, we do not agree that the prosecutor used the defendant's answers to these questions in closing.

hundred questions about testimony of other witnesses and improperly communicating to jury that defendant was lying).

3. Challenged witness testimony. The defendant takes issue with the testimony of four witnesses: Maya's mother, Maya, Joanne (a pseudonym for another female former student), and assistant principal Sandler. Maya's mother's testimony was not supplemental first complaint testimony. On direct examination, she did not, as the defendant now maintains, "repeat[] what [Maya] and others told" her, but rather described the school personnel's responses to Maya's disclosures. This testimony was permissible. One defense theory was that Maya had either fabricated or exaggerated her claims; in support of this theory, the defendant sought to introduce evidence of the school officials' reactions to Maya's initial disclosures, which reactions, he implied, were inconsistent with receiving a report of a sexual assault. This testimony from Maya's mother was permissible rebuttal to that theory. See Commonwealth v. Bryant, 482 Mass. 731, 735 (2019).

We are likewise unpersuaded by the claim based on two snippets of Maya's first complaint-related testimony. While the snippets were hearsay, the references were fleeting and were not repeated, and -- had there been an objection -- could have been admitted for context and state of mind, rather than for the truth of the matter asserted. See Commonwealth v. Trotto, 487

14

Mass. 708, 727-728 (2021). The claim based on Joanne's challenged testimony is likewise unavailing. Joanne was available for cross-examination and impeachment, and it was for the jury to determine whether and how much of her testimony to credit. See Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011) ("If, from the evidence, conflicting inferences are possible, it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province").

Sandler's unobjected-to testimony about learning of Maya's disclosures and Sandler's conversation with Maya's mother similarly created no substantial risk of miscarriage of justice. The defense had introduced guidance counselor Leanne McCarthy's interview of Maya and Sandler's notes about Sandler's conversations with McCarthy as topics on direct examination, consistent with the defense attack on Maya's credibility, seeking to show that her story was enhanced over time. The challenged questions by the prosecutor addressed this testimony. Having opened the door by asking Sandler about these statements in the witness's notes, counsel's failure to object can be understood as a recognition of the latitude afforded the Commonwealth in responding. See Commonwealth v. Parreira, 72 Mass. App. Ct. 308, 318 (2008) (where defendant's strategy involved highlighting to whom, what, and when victim disclosed,

15

no error in permitting Commonwealth to elicit further testimony on same topic).  The admitted testimony did not exceed the bounds of what had been explored on direct examination and its admission was not error.  As to the admission of Sandler's notes, the judge properly gave a limiting instruction as to their use, which the jury are presumed to follow.  Commonwealth v. Watkins, 425 Mass. 830, 840 (1997).

4.  Demonstrative evidence.  We are not persuaded that the judge abused his discretion by denying the defendant's request to demonstrate at trial how his apron and tape measure moved.  "The permission to perform or make experiments or illustrations in the presence of the jury rest[s] in the sound judicial discretion of the" trial judge (citation omitted).  Commonwealth v. McGee, 469 Mass. 1, 9 (2014).  There was ample evidence from which the defense could argue that the defendant wore an apron during the time of the assaults, including a photograph of him in an apron and witness testimony describing him in an apron.[5]

The related claim that the judge "unfairly restricted the defense by prohibiting [a witness] from answering whether Knight kept his tape measure in his apron pocket" misinterprets the testimony; the judge sustained an objection to a question about

_____

[5] Similarly, we find no merit in the defendant's argument that counsel should have had another person play the student in the demonstration of how the defendant might stand behind a student to help them with a project.

16

the measuring tape that (1) assumed facts not in evidence, (2) misstated testimony, and (3) was leading. Counsel made no effort to rephrase the question in an admissible form.[6]

5. _The complaint_. a. _Lego incident_. Citing Commonwealth v. Barbosa, 421 Mass. 547 (1995), the defendant challenges his conviction of indecent assault and battery based on the Lego incident on the ground that the Lego incident was never presented to the issuing clerk-magistrate and therefore the defendant was convicted of a charge for which the clerk-magistrate did not find probable cause. This issue is raised for the first time on appeal; we review to determine whether the error, if any, created a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 296 (2002).

We review de novo, viewing the evidence submitted to the clerk-magistrate in the light most favorable to the Commonwealth, Commonwealth v. Brennan, 481 Mass. 146, 149 (2018), and assessing "whether the complaint application contains 'sufficient evidence to establish the identity of the

---

[6] The defendant claims that, even if none are individually prejudicial, the cumulative effect of the alleged trial errors is prejudicial. There were only two trial errors -- the admission of testimony about non "modus operandi" bad acts and three improper questions to the defendant -- but they were not prejudicial, and we thus decline to engage in a cumulative effect analysis.

accused . . . and probable cause to arrest him.'" Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013), quoting Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). "This standard is 'considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding.'" Brennan, supra, quoting Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984). "To establish probable clause, the complaint application must set forth 'reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense.'" Humberto H., supra, quoting Commonwealth v. Roman, 414 Mass. 642, 643 (1993).

The affidavit in support of the complaint included allegations that the defendant "would stand behind [Maya] in a 'sex position' and would get close every class she had with him" (emphasis added), that she could feel his penis against her back and buttocks, that she first felt this in seventh grade, and that she felt it on at least three other specified occasions. Just as the date of an offense is not an essential element, see, e.g., Commonwealth v. Knight, 437 Mass. 487, 492 (2002), details like the particular project in which the defendant was involved are not essential. See Commonwealth v. Hobbs, 385 Mass. 863, 870 (1982) (no grounds for reversal "when the particular terms of the indictment from which the evidence . . . depart[s] were merely 'surplusage' -- unnecessary to describe the crime -- and

18

did not mislead the defendant, confuse the jury, or raise the danger of retrial after acquittal"). Unlike in Barbosa, 421 Mass. at 552, where one indictment might have pertained to either of two crimes committed on the same date, the allegations here were sufficient to allege multiple indecent assaults and batteries occurring on different dates. There was no error.[7]

b. Amendments to complaint. We likewise discern no error in the amendments to the complaint.[8] We first distinguish substantive amendments, which are not permitted, from amendments as to form, which are permitted in the absence of prejudice or material change. Knight, 437 Mass. at 492; Hobbs, 385 Mass. at 869.

The complaint, brought in September 2018, was twice amended. The requested amendments related to the dates of offenses. As the defendant acknowledges, this is ordinarily a matter of form. See Knight, 437 Mass. at 492. Here, however,

---

[7] The defendant also challenges his conviction of indecent assault and battery based on the sled incident. The affidavit in support of the criminal complaint explicitly described the sled incident -- including that the victim felt the defendant's penis on her buttocks, that "his voice sounded as if he was turned on, and that she could hear him breathing" -- and identified the incident as having happened during the victim's eighth-grade year. The complaint alleged that Maya was enrolled in the STEM class for twelve days of her eighth-grade year before she turned fourteen. Viewing the evidence in the light most favorable to the Commonwealth, and mindful of the probable cause standard, we see no error.

[8] The defendant was convicted of counts two and three, so we address only the amendments to those counts.

19

he maintains that, because Maya turned fourteen during the course of the sexual assaults and different sections of the statute (carrying different maximum penalties) apply when the victim is under fourteen, the date changes became substantive. We need not address this question because we conclude that the challenged amendments did not have the effect of changing the victim's age from under fourteen to fourteen or over.[9]

For count two (sled incident), the alleged date changed twice. It began as a date on which Maya was thirteen then changed (1) to a range of dates including when Maya was thirteen and fourteen, and (2) again to a range of dates on which Maya was thirteen. Similarly, for count three (Lego incident), the alleged date was initially a single date on which Maya was fourteen and was twice amended to allege a range of dates during which she was either thirteen and fourteen or -- as tried -- fourteen. Where the defendant was charged with the same crimes of which he was convicted, and where the charges, as tried, carried the same potential penalties as those for which he was

_____

[9] We note that "[a]ge is an element of the offense of indecent assault and battery on a child under the age of fourteen," but not an element of the charge of indecent assault and battery on a person fourteen or older. Commonwealth v. Dobbins, 96 Mass. App. Ct. 593, 595-596 & n.3 (2019). This distinction is an independent reason for concluding that the amendment to count three was one of form.

20

originally charged, the amendments to the dates of offense were not substantive.[10]

6. <u>Denial of motion for new trial and request for postconviction discovery</u>. The defendant maintains that his motion for a new trial based on ineffective assistance of counsel and request for postconviction discovery were erroneously denied. We address his arguments in turn, bearing in mind that a motion for a new trial may be granted "if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). We examine the denial of a new trial motion only for "a significant error of law or other abuse of discretion," (citation omitted), <u>Commonwealth</u> v. <u>Lys</u>, 481 Mass. 1, 4 (2018), as such motions should be "granted only in extraordinary circumstances." <u>Commonwealth</u> v. <u>Comita</u>, 441 Mass. 86, 93 (2004). Where, as here, the "motion judge and the trial judge were one and the same, we extend special deference." <u>Commonwealth</u> v. <u>DeJesus</u>, 71 Mass. App. Ct. 799, 811 (2008).

a. <u>Trial counsel's performance; prejudice to defendant</u>. A successful claim for ineffective assistance of counsel requires

_____

[10] We decline to consider the defendant's claim that reversal is required even if the amendments were as to form, which does not rise to the level of appellate argument. See Mass. R. A. P. 16 (a) (4), as appearing in 481 Mass. 1628 (2019).

a showing that (1) counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer"; and (2) such conduct deprived the defendant of "an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  We give deference to counsel's tactical decisions unless they were "manifestly unreasonable" when made.  Commonwealth v. White, 409 Mass. 266, 273 (1991), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978).

i.  Lack of motion to dismiss.  The defendant maintains that trial counsel was ineffective in not moving to dismiss the complaint.  We considered the sufficiency of the complaint to support counts two and three in our discussion of the amendments thereto and found it adequate.  Failure to pursue a futile motion does not amount to ineffective assistance of counsel.  Commonwealth v. Vieux, 41 Mass. App. Ct. 526, 527 (1996), cert. denied, 520 U.S. 1245 (1997).

We also perceive no ineffective representation in not filing a motion to dismiss based on the submission of the complaint application to two assistant clerks-magistrate -- if indeed that happened, a factual matter as to which we express no opinion.  See Commonwealth v. McCravy, 430 Mass. 758, 763 (2000)

22

(after no bill, resubmission of evidence to different grand jury not prohibited).[11]

ii. <u>Failure to object during cross-examination</u>. The judge concluded, and we agree, that defense counsel erred by not objecting to the prosecutor's questions about two witnesses' motivations to lie. We exercise our discretion to reach this issue, despite its being inadequately briefed, because the judge and we have concluded there was error.[12] "A witness should not be asked and is not permitted to comment on the credibility of another witness because '[t]he fact finder, not the witness, must determine the weight and credibility of testimony.'" <u>Sanchez</u>, 96 Mass. App. Ct. at 5, quoting <u>Commonwealth</u> v. <u>Triplett</u>, 398 Mass. 561, 567 (1986). Here, the prosecutor asked

---

[11] For these same reasons, the defendant cannot prove that the postconviction discovery he sought "would have materially aid[ed] the defense against the pending charges" (citation omitted), <u>Commonwealth</u> v. <u>Morgan</u>, 453 Mass. 54, 62 (2009), such that it was error for the judge to deny his request.

[12] We decline to exercise our discretion to consider the argument that counsel was ineffective through failure to "object to numerous instances of inflammatory and prejudicial prior bad act testimony and ultimate issue testimony" from a number of other witnesses, supported only by citations to pages of the transcript and neither individually described nor analyzed. See Mass. R. A. P. 16 (a) (4). We have determined that the admission of this testimony was not prejudicial, and counsel has presented no reason for us to conclude that, in the absence of this testimony, the outcome would have been different. See <u>Commonwealth</u> v. <u>Amirault</u>, 424 Mass. 618, 652 (1997), quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 693 (1984) ("not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding").

23

the defendant to do just that, three times asking variations on the question:  What would be the witness's motivation to lie?  Each time, without objection, the defendant answered.

As discussed above, the admission of these statements did not give rise to a substantial risk of a miscarriage of justice.  This is dispositive of the defendant's claim that counsel's failure to object to them rose to the level of ineffectiveness that would warrant a new trial.  See Commonwealth v. LaChance, 469 Mass. 854, 858 (2014), cert. denied, 577 U.S. 922 (2015) ("To prevail on a claim of ineffective assistance of counsel, however, a defendant must also show that counsel's deficiency resulted in prejudice . . . which, in the circumstances of counsel's failure to object to an error at trial, is essentially the same as the substantial risk standard").

iii.  Six claims of foregone exculpatory or impeachment evidence.  The defendant renews his claim that counsel was ineffective by not introducing evidence that in 2017, before any of the dates alleged in the complaint as amended, the defendant had been diagnosed with erectile dysfunction, since this evidence -- he posits -- "was critical to rebut [Maya]'s claim

24

that what she felt for 60 seconds was a 'really hard' erect penis."[13]

We have reviewed the medical evidence proffered to the District Court judge about the defendant's diagnosis and conclude that he neither erred nor abused his discretion when he found that the decision not to introduce that evidence (1) was not "manifestly unreasonable" when made (citation omitted), White, 409 Mass. at 273, and (2) did not deprive the defendant of "an otherwise available, substantial ground of defence." Saferian, 366 Mass. at 96. The diagnosis was ambiguous; it did not undermine the notion that the defendant could achieve an erection; and, to the extent the defendant quibbles with Maya's testimony as to the durations of the assaults, that is not relevant to guilt or innocence, nor so central to Maya's credibility that we are persuaded it was manifestly unreasonable not to introduce this evidence at trial.

We are equally unpersuaded that counsel was ineffective by not trying -- whether through the testimony of Maya's mother or through impeachment of Maya -- to cast doubt on Maya's testimony by contrasting it with her initial statements to McCarthy or by trying to bring in unrelated, purportedly false statements by

---

[13] In their affidavit in support of the motion for a new trial, trial counsel explained that they decided against using this information at trial because they believed the diagnosis postdated the bad acts committed against Althea.

25

Maya.  "In cases where tactical or strategic decisions of the defendant's counsel are at issue, we conduct our review with some deference to avoid characterizing as unreasonable a defense that was merely unsuccessful."  White, 409 Mass. at 272.  "Although the failure to pursue an 'obviously powerful form of impeachment' can theoretically rise to the level of unreasonableness that would constitute ineffective assistance, we have repeatedly stated that, generally, the failure to impeach a witness does not, on its own, constitute ineffective assistance" (citation omitted).  Commonwealth v. Valentin, 470 Mass. 186, 190 (2014).  See id. (not ineffective assistance not to impeach percipient witness who testified that murder defendant said about victim, "[D]ie, motherfucker"; counsel used other methods to highlight inconsistent testimony).  These decisions were not ineffective assistance of trial counsel.

As to the claim that it was ineffective for counsel not to offer the grand jury testimony of a nontestifying witness (McCarthy), the defendant has made no showing that this testimony would have been admissible.  See Commonwealth v. Clemente, 452 Mass. 295, 314-315 (2008), cert. denied, 555 U.S. 1181 (2009), and abrogated in part on other grounds by Commonwealth v. Zanetti, 454 Mass. 449 (2009) (prior grand jury testimony of unavailable witness admissible where "the party seeking the admission of the grand jury testimony can establish

26

that the Commonwealth had an opportunity and similar motive [to that of a jury trial] to develop fully a [now unavailable] witness's testimony at the grand jury" [emphasis added]). This was not ineffective.

iv. Failure to request jury instructions. Given that the trial judge agreed that a limiting instruction was appropriate for Althea's testimony, and that he gave such an instruction, it seems likely that had he been asked he would have given a similar instruction contemporaneously with other witnesses' testimony. The defendant asserts that trial counsel's admitted oversight in not requesting such instructions amounted to ineffective assistance. Not every oversight rises to the level of ineffective assistance of counsel, however, and where the judge gave the limiting instruction in connection with Althea's testimony, and then gave a general instruction about prior bad act evidence as part of his final instructions, we are not convinced that any failure resulted in prejudice to the defendant. See Commonwealth v. Delong, 60 Mass. App. Ct. 122, 131-132 (2003), S.C., 60 Mass. App. Ct. 528 (2004) (reasonable tactical decision not to request limiting instruction for bad act evidence, "as such instructions typically highlight the permissible uses of evidence, as well as the limitations").

Nor was it manifestly unreasonable not to ask for an instruction on accident or the lesser included offenses of

assault and battery. The defense was that the touchings never happened, not that they happened but were accidental or not indecent. Counsel strategically chose not to pursue an accident defense because it was inconsistent with this defense; not asking for the lesser-included instruction was also consistent with this strategic decision. Trial counsel also recalled that the judge rejected a similar request from the prosecutor, and the judge and prosecutor recalled that the judge rejected the request when the defendant objected. Finally, the instruction was not warranted where, as discussed below, both the sled incident and the Lego incident involved an indecent touching based on Maya's testimony.

v. _Claimed errors by prosecutor_. Citing to pages of the trial transcript and the record, and without further discussion or explanation, the defendant claims that the prosecutor violated pretrial rulings, thus rendering the trial unfair. To the extent we are sufficiently informed to be able to consider the issue, for the reasons described by the trial judge, we disagree.

We are similarly unpersuaded by the claim that the prosecution improperly coached Maya at a break in her testimony. The record reflects that, without interruption or objection, counsel questioned Maya about this discussion, and she testified that "the district attorney's office" told her she was "doing

28

well."  There is no record support for the defendant's contention that this conversation "led to [Maya] changing her testimony" about her initial meeting with McCarthy.  We see no error in the trial judge's conclusion that this interaction did not necessitate a new trial.

It is the responsibility of a trial judge to determine whether testimony may incriminate a witness.  Pixley v. Commonwealth, 453 Mass. 827, 832 (2009).  After hearing Officer Lopes's testimony, the judge -- sua sponte, it appears -- raised a concern about legal exposure for other school officials who were mandated reporters and would testify.  The judge told the lawyers, "I am going to put it on you" to inform the witnesses that he would conduct a voir dire on the issue.  Where McCarthy, the school guidance counselor and a mandated reporter, had been aware of the alleged sexual assaults on Maya for approximately three months before disclosing them to the Department of Children and Families, she was so exposed.  See G. L. c. 119, §§ 21 (defining "mandated reporter"), 51A (c).  On this record, we see no error in the judge's determination that there was no prosecutorial misconduct in the circumstances surrounding McCarthy's decision not to testify.  See Pixley, supra at 834 ("[A] defendant has no constitutional right to the testimony of a defense witness who invokes [their] privilege against self-incrimination").

vii.  _Cumulative effect of any errors_.  Because we discern
error only in the failures to object to non "modus operandi" bad
act evidence and the three questions on cross-examination of the
defendant, which errors did not create a substantial risk of a
miscarriage of justice, we need not consider the cumulative
effect of trial counsel's decisions.

b.  _Lack of evidentiary hearing and ruling on_
_reconstruction of record_.

> "Whether to hold a hearing on a motion for a new trial is
> within the judge's discretion, . . . and the judge may
> 'decide a motion for a new trial without an evidentiary
> hearing where no substantial issue is raised by the motion
> or affidavits.' . . .  When the motion judge is also the
> trial judge, as in this case, [he] may use [his] 'knowledge
> and evaluation of the evidence at trial in determining
> whether to decide the motion for a new trial without an
> evidentiary hearing.' . . .  We give substantial deference
> to a judge's conclusion in this regard."

Commonwealth v. Morgan, 453 Mass. 54, 64 (2009).  As the
discussion above reveals, we see no abuse of discretion in, and
therefore no reason to disturb, the trial judge's conclusion
that the motion and affidavits raised no substantial issue
requiring an evidentiary hearing.

In a case in which portions of a trial transcript are not
available, the motion judge is responsible for "determin[ing]
whether the reconstructed record is adequate to present any
errors alleged by the defendant."  Commonwealth v. Harris, 376
Mass. 74, 79-80 (1978).  The judge's rulings on and

30

comprehensive analysis of the defendant's posttrial motions reveal that he determined that the reconstructed record was adequate. As "[t]here is 'enough in the record pertinent to the point to enable us to decide [this appeal] without resort to speculation,'" Matter of M.C., 481 Mass. 336, 345 (2019), quoting Commonwealth v. Bottiglio, 357 Mass. 593, 597 (1970), we discern no error.

7. Evidence was legally sufficient. The defendant challenges the sufficiency of the evidence to prove an "indecent" touching in the Lego incident. Maya testified that the defendant "straddl[ed] [her] back leg and had his body pressed up against [her] body," with his "chest and upper thigh" touching "the top of [her] butt." Viewed in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), this evidence was sufficient to support the verdict. See Commonwealth v. De La Cruz, 15 Mass. App. Ct. 52, 59 (1982) (touching buttocks is indecent assault and battery).

The defendant also challenges the sufficiency of the evidence to prove that the sled incident happened when Maya was under fourteen. As amended, at the time of trial, count two of the complaint alleged indecent assault and battery on a child under the age of fourteen on a date before Maya's fourteenth birthday. The jury heard evidence of both the date of Maya's

31

birthday and the timing of the sled incident.  Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support the verdict.

<u>Judgments affirmed</u>.

<u>Order denying motion for a new trial and request for postconviction discovery affirmed</u>.

By the Court (Henry, Hershfang & Smyth, JJ.[14]),

*Paul Little*

Clerk

Entered:  October 9, 2024.

---

[14] The panelists are listed in order of seniority.